Good morning, everyone. We have six cases on today's argument calendar, and we'll begin with Appeal No. 25-2413, Sharon Weinstock v. R.J. O'Brien Limited. Okay, Mr. Killian, nice to see you whenever you're ready. Thank you, Judge Scudder. Good morning, Your Honor. The case must be reversed for several independent reasons. This morning, I would like to focus on a few of those. Specifically, our personal jurisdiction arguments and execution immunity. Before a United States court can order a foreign brokerage to take a foreign customer's money out of foreign banks and then give it to the Weinstocks, that court has to have personal jurisdiction over both the foreign brokerage and the foreign customer. But in this case, the district court lacked jurisdiction over both the foreign brokerage and the foreign customer. I'd actually like to start this morning with the argument about personal jurisdiction over Beneathco, because that presents a pure question of law. And the way this is shaped up in the briefs, I think it's mostly undisputed. The parties agree that Beneathco is not subject to personal jurisdiction. The question is simply the question of law, whether the Constitution requires that the district court have personal jurisdiction over Beneathco before compelling RJOL to turn over Beneathco's assets to the Weinstocks. And the answer to that is yes. The Supreme Court confronted this procedure in Rush v. Savchuk. In that case, a plaintiff who was in state in Minnesota garnished intangible assets in a proceeding that was brought against the custodian, in that case an insurance company, but did not have a judgment against the insured who was the driver in the accident, and this is the important part, did not also have personal jurisdiction over the owner of that insurance policy who lived and resided in a different state. The Supreme Court held that that procedure was unconstitutional under the Due Process Clause. Personal jurisdiction over the owner of the assets is, quote, analytically prerequisite to garnishing intangibles, even if the custodian of those intangibles is otherwise subject to the personal jurisdiction of the court where the proceeding is brought. Well, here, just changing the party names, it's the same United Kingdom. Even if RJOL has minimum contacts with Illinois, and that's the second issue I'd like to get to with the court today, even if that's true, the Weinstocks don't have a judgment against Beneathco, and so that means they need to have personal jurisdiction over Beneathco in this very case, same as in Rush v. Savchuk. Now, Rush... So while there may have been personal jurisdiction over State Farm in Minnesota, there was not personal jurisdiction over Rush the driver. That's correct. Yes, the driver was a resident of a different state. The victim, the pastor, had moved to Minnesota and then brought the action there. Does your argument... Should we consider that we are dealing with a different statute here and think about whether we would be curtailing the availability of relief under the TRIA, given that most agents or instrumentalities of terrorism, state sponsors of terrorism, don't have contacts in the U.S.? So in other words, you've got your example, but does that really help us in this context where we've got Congress expanding the TRIA so much over the years? A couple of reasons why I think the statutory context doesn't make a difference. Number one, the constitutional requirement of due process, the TRIA, does not in any way deal with personal jurisdiction or otherwise reflect a congressional judgment to change or suggest changes on rules for personal jurisdiction. So our position is whether the case is a tort claim, whether it's a contract claim as sort of a mixed series of claims in Rush v. Savchuk, or an execution against assets claim that the Weinstocks have brought here, due process, the due process rights of Beneathco and the due process rights of RJOL both require that the court have personal jurisdiction over both entities. And I think I'd like to... Are you sure? Can we stay on this for a second? Yes. Are you sure that answer is not overbroad in one sense? The federal statute meant a lot in the fold analysis from last summer, did it not? Yes, but that particular statute expressly addressed personal jurisdiction. It said that courts will have jurisdiction over the Palestinian Liberation Authority as long as the entity does one of two or three things in the United States. Right. So it's not so much that the federal statute is irrelevant. It's that the particulars of the federal statute matter. Correct. And to your knowledge, maybe Mr. Perlin, are there any personal jurisdiction or personal jurisdiction adjacent provisions in the TRIA that you know of? There are not. There are not. The Foreign Sovereign Immunity Act has some, but only has the cases that are brought in the original judgment producing action, not for execution immunity. This court in both the Rubin case and in the AutoTech case has noted the fact that when it comes to execution immunity, the statute, the Foreign Sovereign Immunity Act is substantially narrower and less... I don't know what the right word is, but just And that's consistent with the traditional approach here, that our courts have been open for individuals to obtain judgments against foreign sovereigns and their agencies and instrumentalities, but it has always been substantially harder to actually execute those judgments. And so to your question, Your Honor, I don't think because TRIA does not deal with personal jurisdiction, we are applying the otherwise generally applicable rules of personal jurisdiction, such as those that were brought in Rush v. Savchuk. But the flip side of the And it's a Fourteenth Amendment analysis, not a Fifth Amendment analysis? That's our position, Judge Scudder, because this execution case is brought through a supplementary proceeding. Supplementary proceedings in federal court are governed by Federal Rule of Civil Procedure 69. Federal Rule of Procedure 69 says that procedures in federal court are supposed to be the same as those in state court. And so just as Rule 4K1 brings the Fourteenth Amendment up to federal court for original coercive action, so does Rule 69 bring the Fourteenth Amendment up to federal court for supplementary proceedings such as this. And that's why I would assume that Drexia v. Rogan would be the case that somewhat dictates the level of personal jurisdiction, if needed, beyond due process for Benico. For Benico? Yeah, the concluding argument that was raised in that court, excuse me, in that case, I think is very similar to the one that we're raising here. In that case, the slight difference is that the custodian wasn't the one raising the argument. It was the out-of-state owner. But be that as it may, the court in Dexia Credit did acknowledge that, consistent with Illinois law, it's unheard of to bring a supplementary execution procedure to obtain the assets of someone who's not already the judgment creditor. And the reason that's the case is that it raises substantial due process concerns, especially the question of whether there's personal jurisdiction. Now, the result in Dexia Credit was that the particular assets at issue were owned by the judgment creditor. And so while the court, excuse me, the judgment, yeah, the judgment debtor, I'm sorry, wrong noun. They were owned by the person bound by the judgment. And so the court in that case acknowledged the constitutional problem that's clearly presented here, but didn't have to resolve it on that ground. Here, it's undisputed that the assets are Benico's. That's the whole reason why this has been brought. But the TRA, does it bring it under the ownership of the, in this instance, the debtor by identifying, at least through OFAC, that Benico is a blocked, I guess, component of IRENA? It does not, Judge Pryor. And the Eleventh Circuit addressed this directly in the Stancil case, where a similar argument was made. In Stancil, the agencies or instrumentalities had not been given even notice of the proceeding in the first instance. And one of the arguments that the judgment creditor raised in that case was, well, I gave notice to the terrorist organization, to the foreign, and the Eleventh Circuit said, that puts the cart before the horse. You can't assume that, you can't assume the conclusion that the entity is in fact the agency or instrumentality until you've brought them in properly with personal jurisdiction and then adjudicated that issue. So the mere fact that there is a judgment against Iran, the mere fact that those procedures took place doesn't actually resolve the question that's presented here. That's something the Weinstocks need to prove and have not yet proven in an action where a court has personal jurisdiction over the individual. I'd like to make one more quick point on the Benico issue and then maybe move to the RJOL personal jurisdiction. My last point on the Benico one is that Rush and Schaffer looked at this question from the perspective of the absent owner. But another line of cases, which we discuss in our brief, most notably Western Union versus Pennsylvania and United States versus First National City Bank, look at the exact same procedure from the perspective of the custodian. And in those cases, the Supreme Court also holds that a garnishee, that a custodian who is forced to turn over assets in a proceeding without a judgment that personally binds the owner, then the garnishee's due process rights are also individually violated. The point simply is that the due process rights of Benico as to personal jurisdiction and the due process rights of my client RJOL are inextricably intertwined when it comes to this matter. And therefore, Benico, in our view, is an absent yet indispensable party, which is why the turnover order needs to be reversed. Now moving to the question of personal jurisdiction over my client, RJOL has not availed itself of the privilege of doing business, conducting activity in Illinois with respect to Benico or the Benico trades. On this point, Mr. Killian, can you summarize what you believe the record shows that your client did and did not do as part of clearing the trades? Yes. First off, all that my client did- I know that that's a loaded term. I'm going to ask the same question of Mr. Perlin, so he'll have an opportunity. How about I walk through step-by-step? The trades were executed and initiated by a company called RJO Dubai. The trades were then done on ICE Futures Europe. After the trades were executed, RJO Dubai then again reported the trades to be cleared and did that with the associated clearing house, ICE Clear. ICE Clear then caused separate messages, computer signals, to be sent one to RJOL in London and another to RJO US here. It was that message that RJOL, its computer automated, acted upon to clear the trades, which then caused RJOL to receive the proceeds of the trades and which is the reason why RJOL now holds the proceeds. Did RJOL have a membership? RJOL is a member, but a non-clearing member. Non-clearing member. I think that's an important distinction, because RJOL is not a stranger to ICE Futures Europe. RJOL is a member and can do many things that members can do with respect to the exchange. It can't clear, and so it has to clear using RJO US's clearing membership. May I ask why don't they have that license that RJO US has? Your Honor, the record doesn't disclose the business reasons why that's the case, but it's the case that RJOL does not have a clearing membership. It has only a non-clearing membership. So it can do things on the exchange that members are allowed to do. It's financially responsible for its own customers' trades on the exchange. That wasn't necessary in this case, because unlike some derivative trades, there was no additional margin that was needed to be posted here. They turned a relatively massive profit, and simply the only thing that RJOL had to do after the fact by the clearing was to receive the money for Benethko's account, which it did and still possesses in United Kingdom. What would have triggered the notices to go both to RJOL as well as to RJO US? Because RJO US, if Your Honors look at, I think, Joint Appendix 127, it's an example. It shows the sort of logging in, if you will, of what the process was. What that shows is that it says RJOL does it, and it says, whose membership are you using? And it says RJO US. And so it's that that then causes the clearinghouse to send the separate messages to both entities. I'd like to reserve the remainder of my time. We'll give you your rebuttal time. Can I ask you one other question before you sit down? What's the status of the litigation before the English High Court of Justice? Sure. The UK litigation, well, the court issued its judgment in Benethko's claims in the end of last year. The specific judgment is that RJOL did not have to comply with the two payment instructions that Benethko made preceding the action. The court then further held that RJOL continues to hold Benethko's money in trust, such that, in theory, there's still a relationship between the trustee and the beneficiary. Now, that action concluded with that judgment, Benethko initially sought leave to appeal and was denied. The action is not fully concluded, however, because the issue of costs in the United Kingdom has not been wrapped up. They don't follow the American rule there. They follow the British rule. And so the question of actually paying costs from one side to the other remains to be resolved. How about avenues for appeal? Have those 100% concluded? All I can tell your honors is that the trial court denied the motion for leave to appeal and that, as of this date, we have not received notice that Benethko has further attempted to seek leave from the appellate court. It's possible, but we don't know. But your understanding as you stand here is that the only thing to wrap up is a cost application. And the possibility that there is a motion for an appeal that would soon be filed or has been filed that we just haven't received notice of. To be very clear, Judge Cutter, in the UK system, they can seek leave to appeal either by asking the trial court or by asking the appeal court. But is there a time limit for seeking leave to appeal from the appellate court such that you would know in a certain amount of time? Yes, there is. The time limit expired in January. But we're told by our UK counsel that it's never really possible to rule out the possibility that a motion has been filed but not yet docketed. And that's especially the case here because we understand, and I think Mr. Perlin noted this in his motion for leave to file a certify that Benethko has fired their counsel in the United Kingdom. And so it's possible they may be proceeding pro se. So that's why I can get close but I can't prove the negative. No, understood. Very well. Okay, we'll give you a rebuttal time. Let's hear from Mr. Perlin. Thank you, Your Honors. You're welcome. Good morning. Good morning, Your Honors. May it please the court. RJOL has turned an issue that entirely waved into the primary issue on appeal. In its motion to quash, RJOL raised lack of personal jurisdiction over itself, improper service, insufficient service of process, and the various abstention doctrines. That's how RJOL litigated the case all the way through the hearing on the dispositive motions. When Judge Connelly found that the Weinstocks had made a prima facie showing of personal jurisdiction over RJOL, he ordered them to produce limited jurisdictional discovery on that question. RJOL says that that was a reset. That wasn't a reset. It was a limited order to produce discovery on the one issue of jurisdiction over RJOL. RJOL produced some of the discovery. We had to move for them to compel them to produce the rest of it. Then Judge Connelly ordered supplemental briefing on that question of jurisdiction over RJOL. After the Weinstocks filed their memorandum, the court gave the respondents an opportunity to respond. In that response to our supplementary memorandum, they raised for the first time this defense of a lack of personal jurisdiction over Benethco. What do we make of the argument from counsel that Shafer required the district court, the Shafer case, I'm sorry, required the district court to have personal jurisdiction over Benethco? Judge Connelly recognized a distinction. I think it's very meaningful here. It also goes to Judge Scudder's question about personal jurisdiction adjacent provisions. TRIA allows a judgment creditor to treat the assets of an agency or instrumentality of a terrorist party as if they are the assets of the terrorist party. The focus of the statute is on the assets. It's not on the agency or instrumentality. It doesn't say that they become identical with Iran for all purposes. I mean, hold on a second here. If you step back a little bit, I think Benethco, and I know that's not your client, it's not Mr. Killian's client, but upon the OFAC sanction being promulgated, I think Benethco could approach the U.S. Treasury Department and challenge the designation, correct? Yes. Okay. Now, that's not what this litigation is about. Whether they have or haven't done that, I don't have any idea. Okay. But they could. And it's a pretty, and I think this is why Judge Connelly devoted eight or so pages of his order to this, it's a pretty serious issue, to really adjudicate title in these assets in this proceeding where they're not a party and there's no personal jurisdiction over them, right? So your waiver point is well taken, and the district court in the alternative found waiver, but then the district court proceeded to analyze this issue in quite a lot of depth. And I think the reason, if I had to surmise, was because of the gravity, the legal gravity of the underlying ruling. One thing I remember when I clerked for a district court judge is that sometimes they will add reasons to their holding to make it stick. The judge knows that this is the right outcome. He observed the trial, the whole case. Yeah, it's possible, but both parties weighed in on this. I understand the lateness of it. I get that, but both parties weighed in on it, and you have quite a bit of attention devoted to it. We were given seven pages to address this question in the district court. When after, by the way, RJOL raised the personal jurisdiction question, and before we could even move to request leave to respond to this new issue that they inserted, Judge Canelli's to respond to entered an order inviting us to respond, but limiting the response to seven pages. If you move beyond waiver, though, let's just set that aside. We'll figure it out. We understand. Your position's very clear on it. What is your response to your adversary's contention that under the principles, there's no factual identity in the case, of course, but under the principles of cases like Schaffner versus Heitner, Rush v. Savchuk, that there's a problem here? There I would say, again, that in those cases, the plaintiff seized assets of a defendant to obtain personal jurisdiction over the defendant. That was the mechanism that was used in both cases. In this case, we served citations to discover assets, and we seek to use TRIA to seize the assets to seize the assets. There's no holding in this case that will bind Beneathco beyond the rights to these assets that are being held by RJOL. It's not personal jurisdiction. Sorry? I'm sorry. So what I'm hearing you say is that maybe the issue is misframed, that the issue here in the supplemental proceeding under Rule 69 is who owns what, as the judge was answering who owns what asset, and that's where our focus should be? It's not only who owns it, it's the assets are treated as if they belong to Iran. Courts have used the veil-piercing analogy, but it's not real veil-piercing, because veil-piercing... But to describe the proceedings that way, why is the due process clause as a categorical matter taken out of consideration because it's a supplemental proceeding? And what supports that? It's not taken out of the equation. The 11th Circuit has held in its stance that the process that's due under these circumstances is notice and an opportunity to be heard. As Your Honor pointed out, Beneathco had notice of these proceedings. They could have come in, they could have raised a personal jurisdiction defense themselves. They chose not to, but they had notice of the proceedings, they chose not to attend, they chose not to raise the defense themselves. And there's no reason why RGOL should be able to now raise it when... Okay, so that is to say, so that argument is personal jurisdiction is not necessary. Some form of due process may be necessary. Notice and comment is sufficient in your view. Is it a 14th or Fifth Amendment analysis? It would be a Fifth Amendment analysis, but I don't think that's necessary here. I think that it's not that personal jurisdiction is required over Beneathco, it's not. It's required over the assets. And the court must have jurisdiction over the asset at issue, like an NREM proceeding. When you have... If Beneathco owned real estate in Illinois, there's no question that by providing notice and an opportunity to be heard, that would have been sufficient due process to seize that asset. Here, it's an intangible asset that is subject to garnishment in Illinois because it's held by a party that is subject to jurisdiction. Do you agree that if we affirm that Beneathco, we affirm and the US Supreme Court denies certiorari review, that Beneathco has lost title to its assets? Yes. Because there's been a turnover to your clients. Would that be the... Once there's a turnover, they're free to claim the money from RGOL, but RGOL has already indicated in the English proceedings that they will raise the defense that this money that they were holding for Beneathco... What's the legal effect of the turnover order in the district court? That they lost title, correct? I have title to cash, to money, an intangible asset. They've lost money. They've lost an ownership, right? They've lost the money. They've lost the money, yes. Okay. What's your understanding of the UK litigation while we're at it? It's a little unfair. You all aren't parties to it, but it would benefit us to know what you know. We're not parties, but I attended the entire trial because we couldn't count on getting disclosures as to what was actually happening there. We learned interesting things. We learned that RGOL's own expert said that the trades were conducted through RGOUS and that RGOUS would have been subject to sanctions had it not blocked the assets. But the English proceedings are over. The trial court dismissed the case. Beneathco moved for leave to appeal. The trial court denied leave to appeal. It had a deadline of January 12th, I believe, to seek leave to appeal in the Court of Appeals. I do understand that those do not get docketed immediately, necessarily, and there is lag time, but this is a very long lag time. I spoke with one of the barristers for Beneathco to find out if there was an appeal being filed. He informed me that he was terminated and the solicitors were terminated. He didn't know whether they were obtaining other counsel or just walking away because he did get hit with a very substantial attorney fee award. Okay, so there may be some cost attorney fee litigation, as Mr. Killian referenced, but as best you know, is the litigation itself concluded? Yes. It's over? Yeah, we have no indication that it's not. I can't say. I received an email today from, I emailed the Court of Appeals as well last week to say, to ask is there any update, has anything been docketed? I also asked counsel for RGOL. They hadn't heard anything. The court responded today with an answer that didn't address, you know, just saying who are the parties, and so I wrote back with the parties, but it's what I understand is very unlikely at this point that there is a, it's not just an appeal pending, it's a request for leave to appeal that they would file, and if they file that, then leave to appeal has to be granted, and then they would have to prevail for there to be conflicting decisions. There's not, there aren't going to be conflicting decisions here. Let's dip back into your merits for a bit. Suppose instead of clearing the trades, RJUS had just stored a record of the trades on their servers here in Chicago. From your perspective, would their contractual relationship yield enough for us to find personal jurisdiction over RJUS? Well, it would depend on what they're storing those records for. I mean, RGOL claims this is just bookkeeping, but if you look at the agreements, they're very detailed about what obligations RGOL has to RJUS in the United States, in Illinois. For example, the big one is covering margin. What happens here in commodities, kind of education in commodities over the last few months, you might have layers of clearing brokers, and so at each level, you had RJO Dubai place the order. RGOL in London did some clearing and sent it to RJUS, which has a clearing license. They're saying, well, we pushed all the buttons, we're the ones clicking on the computer, but that doesn't matter. RJUS is the party that cleared the trades as far as the ultimate clearing house is concerned, and then you've got the exchange. But what happens at each stage of clearing is that the party that's doing the clearing is assuming financial responsibility for margin to cover any losses that their client doesn't cover. So RJUS was on the hook for any losses that would arise out of these trades. The agreements provided, they passed that on to RGOL, but that doesn't detract from the fact that RGOL committed to covering margin, to having security on deposit with RJUS. So how do you respond to Mr. Killian's point that what you're saying here is counterfactual with respect to these particular trades? So in other words, maybe there's a circumstance where a margin would have to get posted, but here it didn't. And I think his point with that is just to say that the contact was quite limited because there wasn't a margin requirement. So two things. One is you can't decide whether there was purposeful availment in Illinois based on what happened after the fact, whether they made money or lost money. The fact is that RJUS was on the hook. If it had gone down, if the investor had gone down, so was RGOL. The other thing is this, is that because the trades, the positions are held in an omnibus account with trades of other RGOL customers, the agreements provide that RGOUS can hold the entire account accountable for any losses and need not, it doesn't even know who the specific customers are for each trade. It's looking at the entire account. But should we be following Stancil? I'm sorry? Should we be following Stancil? Yes. We provided notice and an opportunity to be heard. We asked the court to order us to notify Beneathco. We made extensive efforts to notify them. They actually received the notice and that's all the process that's due. The other thing about is read RGOL's arguments very closely. They talk about what RGOL didn't do, did not do in Illinois, what RGOUS did not commit to doing, but they don't talk about what the agreements explicitly say were, was required of each party. And I think that's true in many instances in the brief. Check the citations, cite to the records, look at the record, see if it says what they say it doesn't. Okay. Mr. Perlin, thank you. Mr. Killian, we'll give you your rebuttal time. We used up a lot of your opening time with questions. Thank you, your honors. I'll try to be brief and I'll start where Mr. Perlin concluded with the agreements. The agreements are in the record. Mr. Perlin cites a number of provisions from those agreements that were simply not triggered in this case. For instance, paragraph two of the omnibus account addendum begins with the sentence, unless the customer expressly instructs RGO otherwise at the time of placing an order with RGO. No one placed an order with RGO here. RGO Dubai was the one who placed the, who executed the trades on the exchange. RGOL then cleared it afterwards. My point is this, when I call this a form agreement, it covers a range of situations that may or may not come up and connect with any individual trade. And our position is that the particular provisions Mr. Perlin is pulling out context were not triggered by the Beneathco trades, which is why those provisions in the agreement aren't relevant. Moreover, the work that RGO US did, the clearing, the record keeping that it did is not imputable to RGOL. It's something that RGO US had to do because it was the clearing member, its own obligation, an independent obligation to ICE Futures Europe. Isn't that your business model? I don't know if I can say that more broadly, your honor. I just think as to this particular exchange, that's the case. RGOL is a non-clearing member, not a clearing member of that exchange. Working backwards, the court discussed with Mr. Perlin his argument that is this just a case where the district court is attempting to exercise jurisdiction over the assets, in which case you don't need to have personal jurisdiction over the owner. Shaffer v. Heitner deals with this directly in multiple places. I direct the court to page 206 and 212, where the Supreme Court said an adverse judgment in rem directly affects the property owner by divesting him of his rights and property before them. The distinction between in rem and in personam jurisdiction was interred with Mullane v. Central Hanover Bank and Trust, where the Supreme Court said that those esoteric and ancient distinctions between forms of jurisdiction no longer control due process under the 14th Amendment. I mean, if we were forced to label, it's probably quasi-in rem. That's our position, yes. It has elements of an in rem proceeding and elements of an in personam proceeding. And finally, I'd like to end where Mr. Perlin began on waiver. Just a few quick hits. Number one, our position is the district court did not find waiver. The district court nodded in the direction of waiver, but then went on to say that the merits controlled, that he would rule that way. Number two, this court held in Traveler's Insurance, footnote one, we cite this in our brief, that a supplemental brief is in fact adequate to preserve an issue for appeal. And in that case, the supplemental brief wasn't even invited by the court, whereas here, the district court invited us to file that supplemental brief. Finally, I do think that the argument on personal jurisdiction over Beneathco was not raised for the first time in that brief. I spent a full third of my oral argument on that. And the reason is, the way this played out, we filed the motion to quash. The motion to quash was only as to the citation served against RJOL, because it wasn't until responding to that motion- Counsel, I'm sorry. I see your time has run, but I did have one follow-up question. Yes. On the Weinstock representation of the United Kingdom's litigation is over. Are you all still requesting that we apply the prior exclusive jurisdiction doctrine or the international comedy doctrine? I just wanted to make sure I had a response from you on that one.  You're gone? So you would still? Yes. I could explain it to the court if you'd like to hear, but my time is up. No, I just wanted to make sure that that wasn't gone. Okay. Thank you, Your Honors. Okay. Mr. Killian, thanks to you and your colleagues. Mr. Perlin, you have the thanks to the court as well. Appreciate your advocacy. We'll take the appeal under advisement.